**COUSINEAU, Guardian, Plaintiff-Appellant, v. INDUSTRIAL COMMISSION, Defendant-Appellee.**

Ohio Appeals, Second District, Montgomery County.

No. 2074.   Decided December 10, 1949.

L. R. Cousineau, Dayton, Kenneth Agee, Columbus, for plaintiff-appellant.

Herbert S. Duffy, Atty. Genl., T. Vincent Martin, Robert W. Halterman, Asst. Attys. Genl., Columbus, for defendant-appellee.

## OPINION

By WISEMAN, J:

This is an appeal on law from the judgment on the verdict rendered for the defendant in the Common Pleas Court of Montgomery County, Ohio.  Motion for new trial was filed and overruled.

The plaintiff claims he sustained an injury on September 7, 1944 while working as a maintenance man for The Johnston-Shelton Company at Dayton, Ohio.  The Industrial Commission recognized the injury and paid medical bills incurred, but refused to recognize any disability resulting from the accident.  After final order of the Industrial Commission on December 6, 1948 denying compensation to the plaintiff the action was instituted in the Common Pleas Court.

The plaintiff based his claim for compensation on the fact that as a result of the injury which he sustained from falling from the ladder on September 7, 1944 he suffered from numbness, dizzy spells, loss of memory and psychoneurosis. The plaintiff presented evidence for the purpose of establishing causal connection between the injury and the alleged disability. The medical witness called on behalf of the plaintiff testified that after he had examined the plaintiff his diagnosis was "psychoneurosis, anxiety state, severe." This examination took place on July 23, 1947. Another medical witness testified that he diagnosed the plaintiff's condition as neurasthenia.

The hearings before the Commission extended over a considerable period of time, the first hearing taking place on June 11, 1947, and the last hearing on July 21, 1948. Sometime prior to the last hearing the plaintiff was committed to the Dayton State Hospital because of mental illness. At the last hearing the defendant called Dr. E. L. Braunlin, a recognized psychiatrist, who testified that the plaintiff was a paranoid and that he had been suffering from paranoia at the time the injury took place and sometime prior thereto. He further testified that there was no causal connection between the injury and the condition from which the plaintiff was suffering.

The first error assigned by the plaintiff is that one of the medical witnesses called by the plaintiff was permitted to testify on cross examination that the plaintiff was suffering from neurasthenia and that such condition was not caused by the injury. Before the plaintiff is entitled to recover he must show a causal connection between his disability and the injury. This evidence goes directly to refute any claim of causal connection and was admissible for that purpose.

During the cross examination of the two medical witnesses called by the plaintiff it is apparent that the plaintiff proceeded to present the claim on the basis of an aggravation of a pre-existing disease. A change of the theory on which the plaintiff was entitled to recover was permissible even though not pleaded. **Scherder v. Industrial Commission, 73 Oh Ap 172, 55 N. E. (2d) 340.**

The second assignment of error is directed to the testimony of Dr. Braunlin, which was given after the plaintiff had been adjudged insane and was committed to the Dayton State Hospital. No issue of insanity was made, either by the pleadings or the evidence. The testimony given by Dr. Braunlin was given for the purpose of showing that the disability from which the plaintiff suffered did not arise by reason of

the injury but from a mental condition which was progressive in its nature, and that at the time of the injury the plaintiff was suffering from paranoia although the disease was not as pronounced as at the time the testimony was taken. In our opinion this testimony was admissible.

Plaintiff further contends that the testimony of Dr. Braunlin was based on hospital records which were not introduced in evidence. The record shows that Dr. Braunlin took a history from the plaintiff, and that he also examined the records of the Dayton State Hospital and the Good Samaritan Hospital, which were not placed in evidence. The witness referred to these hospital records twice in his testimony. The plaintiff interposed a motion to strike the testimony of the witness, which was overruled. We are unable to determine from the record how much this information influenced the witness in giving his expert testimony. It is apparent that the witness placed reliance on the findings made at the Good Samaritan Hospital. In our opinion to permit the witness to testify from information gathered from records not in evidence constitutes reversible error.

The plaintiff also assigns as error the refusal of the court to give a special charge submitted by the plaintiff, as follows:

"I charge you as a matter of law, that, if you find the injury Roy Boughton suffered at the Home Store caused his insanity to appear sooner than it would have otherwise, had there been no injury, then your verdict shall be for the plaintiff."

There was no issue of insanity and the court very properly refused to give this special charge on a matter which was not an issue in the case. The court properly charged on aggravation of a pre-existing mental condition. On this issue evidence was presented and there was ample evidence from which the jury could conclude that the plaintiff failed to prove by a preponderance of the evidence that the injury was the proximate cause of the disability. The jury resolved this issue in favor of the defendant.

Finding error in the record prejudicial to the appellant the judgment is reversed and the cause remanded for further proceedings according to law.

MILLER, PJ, and HORNBECK, J, concur.